IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LORETTA W. FRANKLIN,                        )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )       Case No. 7:16cv167
                                            )
WELLS FARGO BANK, N.A. and                  )
UNION SECURITY LIFE INSURANCE               )
COMPANY                                     )
                                            )
        Defendants.                         )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Union Security Life Insurance Company, improperly named herein as it has ceased to exist due to an earlier merger with the proper party Defendant, American Bankers Life Assurance Company of Florida (hereinafter referred to as "**ABLAC**"), by counsel, submits this Memorandum in support of its Motion to Dismiss this action brought by the Plaintiff. For the reasons set forth herein and in accordance with 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of this action is warranted as the Complaint fails to state a claim under Virginia law against this defendant.

### Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim, not the facts supporting it. The purpose of stating a well-pleaded claim is to "give the defendant fair notice of the claim and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). A well-pleaded claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." Id. at 1964–65. Thus, when the allegations in a complaint fail to sufficiently state a claim entitling the plaintiff to relief, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 1966.

## Factual Allegations and The Policy at Issue

The relevant factual allegations in Plaintiff's Complaint are set forth below. It should be noted that the alleged Contract attached to the Complaint, and attached hereto as Exhibit A, is actually the Application for Insurance. The specimen Certificate of Insurance attached as part of Exhibit B to Plaintiff's Complaint, is the Contract at issue. With regard to Jim Ferrin's application for insurance and the events that followed, Franklin alleges as follows:

> 1.    Plaintiff Loretta W. Franklin (Ms. Franklin) is and individual domiciled and living within the jurisdictional district of this Court. She is the former title and deed holder, and rightful title holder· and owner of real estate located at 1317 Chapman Avenue, S.W., Roanoke, VA 24016 (the real estate);
>
> 2.    Ms. Franklin, who is 78 years old and disabled, owned the said real estate free and clear from any liens, mortgages, encumbrances, and the like, as of the date of her marriage to Mr. Jim Ferrin, and said real estate was, and remained, solely in the name of Ms. Franklin;
>
> 3.    In 2006 Mr. Jim Ferrin signed, and Defendant Wells Fargo issued, a mortgage in Mr. Jim Ferrin's name, said mortgage being secured by deed of trust and attached to the said real estate;
>
> 4.    At the behest of Defendant Wells Fargo, who was acting at all times both on its own behalf and as agent for Defendant Union, and for the benefit of Mr. Jim Ferrin and of Ms. Franklin, Mr. Jim Ferrin signed a contract with and through Defendant, Wells Fargo with Defendant Union. Said contract was a mortgage disability insurance policy, dated May 22, 2006 (the contract). The said contract provided insurance payments to satisfy in-full all outstanding payments for the said mortgage in the event Mr. Ferrin were to become disabled. A copy of the said contract is appended hereto, marked Exhibit A.

2

5.     As Ms. Franklin was the sole title owner of the said real estate, Defendants knew that the said contract was specifically to be for the benefit of Ms. Franklin, notwithstanding her name not being on the said contract, notwithstanding her not being a signatory thereto;

6.     In 2011 Mr. Ferrin became permanently disabled, and the benefits of the said contract were invoked. Throughout the invocation of, and the period during which benefits thereunder were paid, Ms. Franklin and Mr. Jim Ferrin performed all their obligations under, and complied in all particular with the terms of the contract. For a time Defendant Wells Fargo received payments on the said mortgage for their own benefit, in satisfaction of the mortgage, from Defendant Union, in compliance with the terms of the contract;

7.     Inexplicably, Defendant Wells Fargo stopped receiving, and Defendant Union stopped paying, the mortgage payment benefits due under the contract after a period of 24 months;

8.     In response to said demand for continued payments and notice, Defendant Union asserted a spurious, bad-faith and indefensible and unconscionable position that the said mortgage payment insurance coverage policy contains a clause limiting the maximum coverage under the policy to 24 months payments in the monthly disability benefit amount of $550. 75. Said response from Defendant Union is attached hereto as Exhibit B;

9.     The only place anywhere on the face of the policy contract document that references any maximum benefits is directly under, and specifically within the box referring to "retroactive" benefit payments only, immediately under the designation of "Retroactive" that the further clarification appears in parentheses as: "(24 Max Benefits)," see Exhibit A;

10.     The clear and unmistakable tenets of contract interpretation elicit that the only fair and reasonable reading of that term of the policy coverage is that the "24 Max Benefits" applies to the retroactive benefits available under the policy, and not to the entire policy itself;

11.     The interpretation urged by Defendant Union is in direct conflict with the remaining terms that are plain and clear on the face of the policy contract document, to-wit, that: the "Terms of Coverage in Months" is 180 months; the "Loan Terms" is 180

3

months; the total "Initial Amount of Insurance" is $50,000.00; and the "Expiration Date of Coverage" is 08/21/2021. See Exhibit A;

12. Defendant Union's bad-faith suggestion that the "24 Max Benefits" notation in the "Retroactive" portion of the contract is to be read to apply to the coverage in its entirety under the policy is a direct contradiction to the "180 months" of loan term coverage months, the total amount of insurance coverage, and the expiration date of the policy as a whole;

13. Defendants were advised of each of the foregoing facts, and that Defendant Union, for whom Defendant Wells Fargo had acted as agent at all times material to the transaction of the contract in question, had refused coverage based on the bad-faith unconscionable position taken by Defendant Union set forth herein above;

14. In refusing to seek payment of the mortgage principle under the said contract, Defendant Wells Fargo adopted the position of Defendant Union;

15. The Defendants' actions as described more particularly herein above in first soliciting, then obtaining the agreement of your Plaintiff and of Mr. Jim Ferrin to the terms of the contract, and subsequently asserting an unconscionable interpretation of the terms of the contract that is directly contrary to the plain and unambiguous terms of the contract entitling Plaintiff to 180 months of monthly benefits in the amount of $550.75 per month until the contract's expiration in 08/21/2021, evidence intention on the part of Defendants to defraud the Plaintiff;

16. Defendants engaged in a pattern and practice of defrauding Plaintiff in that during the lite of the contract up until the time Mr. Jim Ferrin became disabled triggering the mortgage benefits under the contract, Defendants failed to advise, clarify, or otherwise inform Plaintiff and/or Mr. Jim Ferrin. that the contract, despite its clear and unambiguous facial terms, limited benefits thereunder to a period of 24 months, or that Defendants intended to assert the position that the contract did so;

17. At the time of execution of the contract Defendant Wells Fargo, and Defendant Union through its agent, Wells Fargo, affirmatively represented to Plaintiff and to Mr. Jim Ferrin that the contract benefits would cover the entirety of the mortgage in

4

the future event of Mr. Jim Ferrin's disability, up to and including 180 monthly payments of $550.75 each, until the contract's expiration date of 08/21/2021. Defendants made the said representations knowing that they were false, intending to assert a limitation of 24 months of mortgage payments in the event Mr. Jim Ferrin were to become disabled. Defendant concealed the true facts for the purpose of defrauding Plaintiff out of the monthly payment of premiums on the said contract, which Plaintiff and/or Mr. Jim Ferrin paid in full and on time up until the date of Mr. Jim Ferrin's disability triggering the benefits thereunder, and for the purpose of defrauding Plaintiff out of the residual value of the real estate in the event Mr. Jim Ferrin were to become disabled.

18. Defendants had actual knowledge that they intended to assert a limitation on the monthly mortgage payments in the event of Mr. Jim Ferrin's future disability. Defendants further had actual knowledge of Plaintiff's elderly status, of her being physically unable to work and of her having no other source of income from which any remaining mortgage payments could be satisfied. Defendants knew that in the event Mr. Jim Ferrin became disabled Plaintiff would not be able to make the remaining mortgage payments beyond the 24 months of benefits to which Defendants intended to limit the contract, and Defendant Wells Fargo could then foreclose on the real estate, misappropriating the real estate to its ownership and possession;

19. Defendants concealed material facts known to them but not to Plaintiff regarding their pattern and practice of seeking to limit mortgage payments under the contract to 24 months total, with the intent to defraud Plaintiff;

20. Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff's and Mr. Jim Ferrin's reliance, which Plaintiff justifiably relied upon, resulting in damage to her credit standing, costs and putative or titular loss of her property through Defendant Wells Fargo's foreclosure thereof. Plaintiff was unaware of the true facts. Had Plaintiff known the true facts, Plaintiff, among other things, would not have allowed the mortgage to be taken out on her home that she had previously owned free and clear;

5

21. Defendants' fraud is further evidenced by Defendant Wells Fargo's refusal to seek the contract benefits to which it was derivatively entitled through Ms. Franklin, from Defendant Union, when Defendant Wells Fargo received notice of the unconscionable interpretation thereof by Defendant Union, for whom Wells Fargo had acted as agent at all times material hereto.

## Actual Contract Language

The specimen Certificate of Insurance is part of Exhibit B to Plaintiffs' Complaint

and, is likewise attached. In pertinent part, it provides as follows:

> If you become eligible for benefits, a benefit will be paid, subject to the maximum benefit for each separate disability period. The maximum benefit is equal to the maximum number of benefits indicated in the Schedule times the Monthly Benefit. Once the maximum number of benefits is paid, no further benefits will be paid for that period of disability. A period of disability will be considered separate from the prior one if: (A) The two disabilities are from totally unrelated causes; or (B) You return to work "after a disability and are employed at least 90 consecutive days before becoming disabled again. If employed less than 90 days and disability is from a cause related to the prior one, they will be considered the same period of disability. Disability Benefit Period: Benefit payments will continue until you are no longer totally disabled, the maximum benefits have been paid, your debt has been paid, or when insurance stops, whichever occurs first.

## Arguments and Authorities

I. **Plaintiff Fails to State a Cause of Action for Breach of Contract.**

A. **Plaintiff Is Not A Party To The Contract And Has No Standing To Assert Breach Of Contract As An Alleged Third Party Beneficiary.**

Plaintiff's first cause of action is for breach of a contract to which she is not a party.

Under Virginia law, to have standing to sue on a breach of contract theory, Plaintiff must

prove that the parties to the principal agreement "clearly and definitely intended" to confer a

benefit upon him. *Copenhaven v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989): see

6

also *Food Lion, Inc. v. S. L. Nusbaum Ins. Agency, Inc.*, 202 F3d 223, 229 (4th Cir. 2000) (applying Virginia law).

> "The essence of a third—party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain."

*Copenhaven*, 238 Va. at 367, 384 S.E.2d at 596.

The third-party beneficiary must demonstrate that he was a direct beneficiary of the contract and not simply an incidental beneficiary. *Bank of Am. v. Mus*selman, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003*); Radosevic v. Virginia Intermont Coll.*, 651 F.Supp. 1037, 1038 (W.D. Va. 1987). The four corners of the agreement reveal whether the contracting parties clearly and definitely intended to directly benefit a third party. *Id.* at 1039.

In the instant case, the four corners of the principal agreement do not establish a clear and definite intent to confer benefit upon Franklin. Not only is she not even mentioned in the contract, there is no contract language that would suggest that any of the contracting parties had contemplated Franklin and any incidental benefit she might derive from the contract. The Complaint, likewise, is completely silent on *any* actual communications between the parties on this issue. In her Complaint, Franklin suggests that the Defendants must have known she was intended to be a third party beneficiary "as Ms. Franklin was the sole title owner of said real estate." (¶ 7). However, not only is this not addressed in the Contract but the fact that Franklin may have held title to the property upon which a separate mortgage was secured is woefully inadequate under Virginia law to establish her status as a third party beneficiary. The element of "clear and definite" intent is completely absent.

7

## B. As A Matter Of Law, The Contract At Issue Has Not Been Breached By ABLAC.

Even if Franklin could be considered a third party beneficiary of the insurance policy

at issue, she cannot establish breach of contract as a matter of law. In order to state such a

cause of action, Plaintiff must allege (1) a legally enforceable obligation of a Defendant to the

Plaintiff, (2) the Defendant's violation or breach of that obligation, and (3) injury or damage

to the Plaintiff caused by the breach of obligation. *Vlloa. v. QSP, Inc.,* 271 Va. 72, 79, 624

S.E.2d 43, 48 (2006). Franklin's Complaint falls short here because there has been no

breach of contract by ABLAC or resulting damages to the Plaintiff. The Contract is clear and

unambiguous on its face.

As noted above, the Contract or Certificate of Insurance issued to Ferrin, Franklin's

ex-husband, clearly stated the length of the obligation of ABLAC to pay benefits in

connection with any period of disability by Ferrin:

> If you become eligible for benefits, a benefit will be paid, subject
> to the maximum benefit for each separate disability period. The
> maximum benefit is equal to the maximum number of benefits
> indicated in the Schedule times the Monthly Benefit. Once the
> maximum number of benefits is paid, no further benefits will be
> paid for that period of disability. A period of disability will be
> considered separate from the prior one if: (A) The two
> disabilities are from totally unrelated causes; or (B) You return
> to work "after a disability and are employed at least 90
> consecutive days before becoming disabled again. If employed
> less than 90 days and disability is from a cause related to the
> prior one, they will be considered the same period of disability.
> Disability Benefit Period: Benefit payments will continue until
> you are no longer totally disabled, the maximum benefits have
> been paid, your debt has been paid, or when insurance stops,
> whichever occurs first.

(See Specimen copy of Certificate, attached to Exhibit B to Plaintiff's Complaint).

8

Franklin's Complaint further makes clear that ABLAC met the terms of its obligation under the Contract. Accordingly, for this reason as well, dismissal of this action is warranted.

## II. There is No Separate Cause of Action for "Breach of Duty of Good Faith and Fair Dealing" Under Virginia Law or Punitive Damages Flowing Therefrom.

Plaintiff's second theory of recovery in this case is another attempt to assert a cause of action for breach of contract and, for all the reasons set forth above, fails as a matter of law. Moreover, there is no such separate cause of action under Virginia law and this appears to be an effort by Franklin to recover punitive damages for an alleged breach of contract which, likewise, is at odds with overwhelming precedent from the Fourth Circuit and the Virginia Supreme Court. See, e.g., *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669 (4th Cir. 1986) (Virginia law does not recognize the tort of bad faith refusal to honor a first-party insurance obligation and punitive damages are unwarranted in such a breach of contract action.); *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983) ("We adhere to the rule of *Wright v. Everett* in requiring proof of an independent, willful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages, regardless of the motives underlying the breach.")

Accordingly, dismissal of this theory is likewise warranted.

## III. As a Matter of Law, Plaintiff Cannot Establish the Requisite Elements to State a Cause of Action for Fraud or For the Recovery of Punitive Damages.

Again for the reasons set forth in Section I above, Franklin lacks standing and a legal basis for asserting a cause of action for alleged fraud pertaining to a contract to which she was not a party. Moreover, the allegations set forth in the Complaint, likewise, do not have a sufficient factual foundation to survive dismissal of a Rule 12(b)(6) Motion.

9

As this Court is aware, in alleging fraud, a party must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). At a minimum, a Plaintiff must describe the time, place and contents of the false representations. *United States ex rel. Wilson v. Kellog Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008). To satisfy the pleading standard for actual fraud, a Plaintiff must clearly allege a contemporaneous intent not to perform at the time a fraudulent statement is made. *Girgis v. Salient Solutions, Inc.,* 2012 U.S. Dist. LEXIS 94764 (E.D. Va. 2012).

In addition, as well articulated in *A.T. Massey Coal. Co. v. Rudimex GmbH*, 2006 U.S. Dist. LEXIS 1882 (E.D. Va. 2006):

> Virginia courts are quick to "safeguard against turning every breach of contract into an actionable claim for fraud." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 507 S.E.2d 344, 348 (Va. 1998). . . In general, a fraud claim is not actionable "where the position of the complaining party is no worse than it would have been had the alleged fraud not been committed." *Cmty. Bank v. Wright,* 221 Va. 172, 267 S.E.2d 158, 160 (Va. 1980) (quoting *Cooper v. Wesco Builders, Inc.,* 76 Idaho 278, 281 P.2d 669, 672-73 (Idaho 1955).

*Id.* at *13.

Here, the allegations in the Complaint establish that the Policy actually issued to Jim Ferrin expressly limited disability benefits to 24 months for any one period of disability. The Certificate or Policy was issued in 2006 to the policy holder with this plain language. Other than using the terms "fraud" and "bad faith" there are no factual allegations supporting this cause of action. In fact, Plaintiff's erroneous interpretation of the insurance application, not the Contract, is based on her own interpretation and there is no allegation that ABLAC misrepresented the 24 month benefit maximum – Franklin's allegation that the Wells Fargo representative failed to adequately advise or inform her of this limitation well demonstrates this fatal flaw to her claim of fraud. Finally, the Complaint is devoid of actual details of the

10

communications allegedly between the parties giving rise to this cause of action. Again, setting aside monetarily her lack of standing to bring this action, Plaintiff is attempting to turn a breach of contract case into something that it is not.

*Respectfully submitted,*

UNION SECURITY LIFE INSURANCE COMPANY

By: s/Melissa W. Robinson
Melissa W. Robinson (VSB #29065)
Johneal M. White (VSB #74251)
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W. - Suite 100
Roanoke, Virginia 24016
(540) 767-2200 – Phone
(540) 767-2220 – Fax
mrobinson@glennrob.com
jwhite@glennrob.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2016, I have electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will then send notification of such filing to the following:

Patrick Michael McGraw, Esquire
McGraw Law, PC
2727 Electric Road, Suite 207
Roanoke, VA 24018
*Counsel for Plaintiff*

Terry Catherine Frank, Esquire
Kaufman & Canoles, P.C.
Two James Center
1021 E. Cary Street, Suite 1400
Richmond, VA 23219

Benjamin Alexander Wills, Esquire
Kaufman & Canoles, P.C.
11815 Fountain Way, Suite 400
Newport News, VA 23606
*Counsel for Wells Fargo Bank, N.A.*

s/Melissa W. Robinson

12